Edwin A. Zipf (EZipf@bressler.com)
**BRESSLER, AMERY & ROSS**
A Professional Corporation
325 Columbia Turnpike, Suite 301
Florham Park, NJ 07932
Telephone: (973) 514-1200
Facsimile: (973) 514-1660

Marshall H. Fishman (Marshall.Fishman@freshfields.com) (Admitted *Pro Hac Vice*)
Timothy P. Harkness (Timothy.Harkness@freshfields.com) (Admitted *Pro Hac Vice*)
Cheryl L. Howard (Cheryl.Howard@freshfields.com) (Admitted *Pro Hac Vice*)
**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
601 Lexington Avenue, 31st Floor
New York, NY 10022
Telephone: (212) 277-4000
Facsimile: (212) 277-4001

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LORD ABBETT MUNICIPAL INCOME FUND, INC., on behalf of its series Lord Abbett High Yield Municipal Bond Fund, a Maryland corporation,<br><br>                     Plaintiff,<br><br>v.<br><br>CITIGROUP GLOBAL MARKETS, INC., a New York corporation, and JOHN DOES 1-10,<br><br>                     Defendants. | Civil Action No. 2:11-cv-05550-CCC-JAD<br>Oral Argument Requested<br>Motion Date: April 2, 2012 |

**CITIGROUP GLOBAL MARKETS INC.'S REPLY MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES .................................................................................. ii

PRELIMINARY STATEMENT .............................................................................. 1

ARGUMENT ........................................................................................................... 3

 I. THE FIRST AND THIRD CLAIMS FOR STATUTORY AND COMMON LAW FRAUD SHOULD BE DISMISSED ...................... 4

  A. Plaintiff Fails Adequately To Allege Claims For Common Law Fraud and Violation of New Jersey Securities Law ................... 5

   1. The Complaint Fails Adequately to Allege The Existence of a Material Untrue Statement or Omission ........................... 5

   2. The Complaint Fails Adequately to Allege Scienter ............ 8

   3. The Complaint Fails Adequately to Allege Loss Causation . 9

   4. The Complaint Fails Adequately to Allege Reasonable or Justifiable Reliance by Plaintiff ............................................ 9

  B. The Statute of Limitations Bars The New Jersey Securities Law Claim .................................................................................... 10

 II. THE SECOND CLAIM FOR NEGLIGENT MISREPRESENTATION SHOULD BE DISMISSED .................... 12

CONCLUSION ..................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Agostino v. Quest Diagnostics Inc.*,
   256 F.R.D. 437 (D.N.J. 2009) .......................................................................... 13

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009) ............................................................ 3, 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................ 3, 9

*Benak v. Alliance Capital Mgt.*,
   349 F. Supp. 2d 882 (D.N.J. 2004) ............................................................... 11, 12

*DeBenedictis v. Merrill Lynch & Co.*,
   492 F.3d 209 (3d Cir. 2007) ............................................................................. 11

*Fellner v. Tri-Union Seafoods*,
   Civil Action No. 06-CV-0688 (DMC), 2007 U.S. Dist. LEXIS 1623
   (D.N.J. Jan. 8, 2007) .......................................................................................... 8

*Garber v. Legg Mason, Inc.*,
   No. 08-1831-cv, 2009 WL 3109914 (2d Cir. Sept. 30, 2009) ........................... 7

*In re House of Drugs, Inc.*,
   251 B.R. 206 (Bankr. D.N.J. 2000) .................................................................. 10

*In re Keyspan Corp. Sec. Litig.*,
   383 F. Supp. 2d 358 (E.D.N.Y. 2003) ................................................................ 7

*In re Kidder Peabody Sec. Litig.*,
   No. 94 CIV 3954, 1995 WL 590624 (S.D.N.Y. Oct. 4, 1995) ........................... 4

*La Pietra v. RREEF Am., L.L.C.*,
   738 F. Supp. 2d 432 (S.D.N.Y 2010) ................................................................. 7

*Lane v. Schmied*,
   2008 WL 351291 (N.J. Super. A.D. Feb. 11, 2008) ........................................ 10

*Lautenberg Found. v. Madoff*,
   Civil Action No. 09-816 (SRC), 2009 U.S. Dist. LEXIS 82084 (D.N.J.
   Sept. 9, 2009).................................................................................................8

*Mill Bridge V, Inc. v. Benton*,
   Civ. No. 08-2806, 2009 U.S. Dist. LEXIS 113566 (E.D. Pa. Dec. 3,
   2009) .........................................................................................................4

*N.J. Econ. Dev. Auth. v. Pavonia Rest., Inc.*
   725 A.2d 1133 (N.J. Super. 1998).............................................................7

*Omega Advisors, Inc. v. Fed. Ins. Co.*,
   Civil Action No. 10-912, 2010 U.S. Dist. LEXIS 125934 (D.N.J. Nov.
   30, 2010)...................................................................................................11

*Prager v. FMS Bonds, Inc.*,
   No. 09-80775-CIV, 2010 WL 2950065 (S.D.Fl. July 26, 2010).................6

*Quinn v. McGraw-Hill Cos.*,
   168 F.3d 331 (7th Cir. 1999).....................................................................10

*Rand v. Cullinet Software, Inc.*,
   847 F. Supp. 200 (D. Mass. 1994).............................................................5

*Redstone v. Goldman, Sachs & Co.*,
   583 F. Supp. 74 (D. Mass. 1984)...............................................................6

*Shogen v. Global Aggressive Growth Fund*,
   Civ. Action No. 04-5695 (SRC), 2007 U.S. Dist. LEXIS 31093 (D.N.J.
   Apr. 26, 2007)...........................................................................................9

*United Paperworks Int'l. Union v. Int'l Paper Co.*,
   985 F.2d 1190 (2d Cir. 1993)....................................................................7

## OTHER AUTHORITIES

Fed. R. Civ. P. Rule 8 ..............................................................................1, 3, 14

Fed. R. Civ. P. Rule 9 ..........................................................................1, 3, 9, 14

Fed. R. Civ. P. Rule 12 ............................................................................1, 3, 14

Defendant Citigroup Global Markets Inc. ("CGMI") respectfully submits this Reply Memorandum of Law in further support of its motion (the "Motion") to dismiss in its entirety the complaint filed by Plaintiff Lord Abbett Municipal Income Fund, Inc. ("Lord Abbett" or "Plaintiff") (the "Complaint" or "Compl.") pursuant to Rules 12(b)(6), 8(a) and 9(b) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

In its Opposition to CGMI's Motion to Dismiss the Complaint ("Opp."), Lord Abbett demonstrates that it knew, understood and accepted the high risk of loss resulting from the high yield "junk" bonds it purchased from CGMI:

> "Lord Abbett is one of many high-yield bond funds that routinely accept greater risk in an effort to achieve greater yield and knew from the 2005 financial statements that this complex project would be in trouble if the plans for improving revenues were not successful." Opp. at 5.

Lord Abbett's concession is dispositive and compels dismissal of the Complaint.

In addition to admitting that it was a sophisticated high yield bond fund that knew that the Las Vegas Monorail was in trouble before it bought the Second Tier Bonds, Plaintiff further admits that its own analyst recommended against the purchase (Compl. ¶ 122), relying solely on the "information provided by Citigroup and *nothing else*." Opp. at 31 (emphasis in original). Therefore, by Lord Abbett's own admission, the "information provided by Citigroup and *nothing else*," was enough for Lord Abbett's analyst to conclude that it should not purchase the

Second Tier Bonds. Compl. ¶ 122; Opp. at 31 (emphasis in original).

Lord Abbett further concedes that the Complaint and the documents to which the Complaint refers establish that:

- The 2005 Audited Financial Statements, which were provided to Lord Abbett prior to its purchase of the Second Tier Bonds, accurately disclosed the Monorail's "serious" financial difficulties, including that:
  - the Monorail had experienced a $45 million loss in 2005
  - the Monorail's liabilities exceeded its assets by $90 million
  - the Monorail was suffering from substantial operational problems
  (Opp. at 2, 5, 16, 19–20);
- CGMI and Lord Abbett were counterparties to an arms-length transaction and did not have (a) a fiduciary relationship; (b) a relationship "where one party expressly reposits trust in another party" or (c) a relationship involving intrinsically fiduciary transactions (*see* Compl. ¶ 112; Opp. at 28 (not contesting CGMI's argument that CGMI and Lord Abbett did not have a "special relationship")); and,
- The Official Statement disclosed the existence of reports prepared by parties who first opposed construction of the Monorail years earlier (Opp. at 25–26).

Lord Abbett similarly does not dispute that Moody's and Fitch downgraded the rating on the Monorail's rated First Tier Bonds before Lord Abbett purchased the unrated Second Tier Bonds and that these downgrades were specifically disclosed in the 2005 Audited Financial Statements. Howard Ex. A at 6.[1]

These concessions doom Lord Abbett's Complaint because they establish the implausibility of any contention that six-year-old projections in the Cox Report

---

[1] Cites to "Howard Ex." refer to the Declaration of Cheryl L. Howard, dated December 12, 2011, submitted in support of CGMI's Motion.

– pre-dating actual operation of the Monorail extension – were material or that CGMI had a duty to disclose those stale projections. To be sure, Lord Abbett's allegation that its own analyst recommended against purchasing the Second Tier Bonds – an allegation that Lord Abbett makes no effort to contextualize or explain – leads to only one plausible conclusion: Lord Abbett is a sophisticated counterparty that made its own evaluation of its high yield bond acquisition and did so knowing that the Monorail Project was in dire financial straits.

Accordingly, there is no cognizable basis for Lord Abbett's fraud and negligent misrepresentation claims. Dismissal is mandated pursuant to Rules 12(b)(6), 8(a) and 9(b) of the Federal Rules of Civil Procedure.

## ARGUMENT

Plaintiff's faulty legal analysis begins from the first sentence of its argument where Lord Abbett relies on a Rule 12(b)(6) standard of review that the Supreme Court rejected in *Twombly* five years ago. *Compare* Opp. at 21 (citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 559 (3d Cir. 2002)) *with Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562–63, 570 (2007). This is more than simply a mis-citation, because Plaintiff returns to the overruled standard throughout its opposition. *See* Opp. at 21, 25, 29. As CGMI demonstrated in its opening brief, Lord Abbett has failed to meet the requirement "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

## I. THE FIRST AND THIRD CLAIMS FOR STATUTORY AND COMMON LAW FRAUD SHOULD BE DISMISSED

Lord Abbett either agrees with or does not challenge the fundamental legal principles which compel dismissal of its fraud claims:

- that an omission is not actionable unless it is "material" (CGMI Memorandum of Law in Support of its Motion to Dismiss ("CGMI Mem.") at 16);
- that undisclosed information is material only if there is a substantial likelihood that disclosure would have *significantly altered* the total mix of available information (*id.*); and,
- that an omission is not material where the information was already available in the marketplace (*id.* at 17).

Lord Abbett similarly does not dispute the legal proposition that "stale" projections – which, because they are six years old, must include those contained in the Cox Report – are immaterial as a matter of law (*id.* at 17–19), and offers no authority to the contrary.[2] Instead, Lord Abbett offers argument unsupported by case law and based on wholly conclusory assertions to support its argument that its fraud claims have been adequately pleaded. None of Plaintiff's arguments, however, is availing.

---

[2] *Mill Bridge V, Inc. v. Benton*, Civ. No. 08-2806, 2009 U.S. Dist. LEXIS 113566, at *61 (E.D. Pa. Dec. 3, 2009), discussed at pages 17–19 of CGMI's opening brief, is directly on point, holding that a two-year-old valuation was not "even remotely" material. Plaintiff, while citing *Mill Bridge*, fails to distinguish it from its claim here. *See also In re Kidder Peabody Sec. Litig.*, No. 94 CIV 3954, 1995 WL 590624, at *5 (S.D.N.Y. Oct. 4, 1995) ("Stale information is not material as a matter of law").

A.   **Plaintiff Fails Adequately To Allege Claims For Common Law Fraud and Violation of New Jersey Securities Law**

1.   The Complaint Fails Adequately to Allege The Existence of a Material Untrue Statement or Omission

Having conceded that CGMI provided it with accurate 2005 financial statements which detailed the Monorail's actual, contemporaneous – and dismal – financial results (Opp. at 3), and having conceded that it knew that the Monorail "would be in trouble" if its plans for improvement did not succeed (*id.* at 5), Lord Abbett is left to argue that it needed a six-year-old set of projections to truly understand the Monorail's problems, even though its own analyst recommended not purchasing the bonds based on the current information CGMI provided (Compl. ¶ 122; Opp. at 31). Lord Abbett's position is both unsupported by case law and implausible.

With regard to the centerpiece of its allegations, the Cox Report, Lord Abbett would have this Court adopt a materiality standard that is contrary to well-established precedent. The cases CGMI cited in its opening brief demonstrate that stale information is not material as a matter of law. CGMI Mem. at 17–19. For instance, the court in *Rand* held that old projections are not material, particularly where, as here, actual data from ongoing operations is available. *Rand v. Cullinet Software, Inc.*, 847 F. Supp. 200, 210 (D. Mass. 1994) (statements regarding project's prospects in September 1985 not material as a matter of law when

purchases made in April 1986). Lord Abbett offers no case to the contrary.

Lord Abbett's other arguments concerning the materiality of the Cox Report also are misplaced. Although it objects to calling the Cox Report mere projections, Lord Abbett refers to the report's "projections" or what the report "projected" or "predicted" or "estimated" or "expected" no fewer than 25 times in the Complaint and in its own brief. *See, e.g.*, Compl. ¶¶ 12, 17, 18, 22, 36, 37, 40, 86, 89, 102, 119; Opp. at 15, 16. As the Complaint itself alleges, the Cox Report was a six-year-old set of projections based on even older *publicly-available* historical data concerning projects in other cities. *See, e.g.*, Compl. ¶¶ 31, 32, 45–52, 56–60.

The Court similarly should reject Lord Abbett's analysis of the purported duty it contends CGMI owed. First, the Municipal Securities Rulemaking Board ("MSRB") rule Lord Abbett cites is entirely irrelevant. It is well-settled that MSRB Rule G-17, and similar rules, do not give rise to private rights of action. *Prager v. FMS Bonds, Inc.*, No. 09-80775-CIV, 2010 WL 2950065 (S.D.Fl. July 26, 2010); *Redstone v. Goldman, Sachs & Co.*, 583 F. Supp. 74 (D. Mass. 1984).

Second, Lord Abbett does not allege that CGMI and Lord Abbett were anything other than counterparties in an arms-length transaction. As Lord Abbett concedes, a counterparty relationship does not give rise to a special relationship or fiduciary duty. Opp. at 28. If Lord Abbett's proposed new materiality rule is applied, a participant in the secondary bond markets like CGMI would have an

affirmative duty to disclose any projection of which it may have at one time been aware, even one six years old and superseded by actual data. Courts have refused to impose such duties to disclose where, as here, no fiduciary duty or special relationship exists. CGMI Mem. at 20–22.

Similarly misplaced is the suggestion that the Cox Report was not "sufficiently" publicly available. Opp. at 29–30. As established in CGMI's opening brief, the Cox Report was publicly known and publicly available. CGMI Mem. at 5, 22. Accordingly, there can be no duty to disclose. *See N.J. Econ. Dev. Auth. v. Pavonia Rest., Inc.* 725 A.2d 1133, 1139 (N.J. Super. 1998). The case law on which Lord Abbett relies is inapposite. *United Paperworks Int'l. Union v. Int'l Paper Co.*, 985 F.2d 1190 (2d Cir. 1993), for instance, involved a publicly available notice to shareholders and is widely recognized as having limited application outside of a proxy context. *See La Pietra v. RREEF Am., L.L.C.*, 738 F. Supp. 2d 432 (S.D.N.Y 2010); *see also Garber v. Legg Mason, Inc.*, No. 08-1831-cv, 2009 WL 3109914 (2d Cir. Sept. 30, 2009) (affirming taking judicial notice of press articles on motion to dismiss and distinguishing *United Paperworks*). Moreover, courts have found that *United Paperworks* (and similar cases) are outdated because of the "dramatic increase in recent years in public access to information via the Internet." *See, e.g., In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 374 n.6 (E.D.N.Y. 2003).

As important, Lord Abbett's response misses the fundamental point of the press reports CGMI submitted with the Motion. As CGMI established in its opening brief, newspapers have been citing the Cox Report for years. CGMI Mem. at 5, 12 n.6, 22. If "remote, local" newspapers could have had access to the Cox Report, certainly a sophisticated high-yield bond fund – specializing in this very type of acquisition – could have, too, particularly because the existence of reports was specifically referenced in the Official Statement. CGMI Mem. at 18–19. Again, Lord Abbett's contentions – like its claims – are implausible.[3]

2.   The Complaint Fails Adequately to Allege Scienter

CGMI's opening brief established that Lord Abbett had failed to plead scienter with the specificity required by Rule 9 of the Federal Rules of Civil Procedure because it does not allege the necessary specifics to support this element of Plaintiff's claim – such as whether the CGMI employee that provided Lord

---

[3] Lord Abbett complains about CGMI's reference in its brief to a Fitch Downgrade (even though the Fitch Downgrade was disclosed in the 2005 Audited Financial Statements) and press articles, but offers no case law to suggest that CGMI's use of these materials is improper. This Court may take judicial notice of the rating agency decisions and the other documents attached as exhibits to Defendant's Motion, because these documents are relevant, public and objectively verifiable. *See Fellner v. Tri-Union Seafoods*, Civil Action No. 06-CV-0688 (DMC), 2007 U.S. Dist. LEXIS 1623, at *4 (D.N.J. Jan. 8, 2007). As such, "not to take notice of them would be to isolate th[e] Complaint from reality." *Lautenberg Found. v. Madoff*, Civil Action No. 09-816 (SRC), 2009 U.S. Dist. LEXIS 82084, at *3–4 (D.N.J. Sept. 9, 2009). This is particularly true where, as here, Plaintiff does not dispute the accuracy of such documents.

Abbett with the Offering Statement, the 2005 financial statements, and the 2006 Budget had actual knowledge of the Cox Report. CGMI Mem. at 22–23. Lord Abbett's response that it "has clearly pled that Citigroup . . . intentionally withheld the Cox Report" (Opp. at 27) is the type of conclusory response that *Iqbal* and *Twombly* prohibit. Such conclusory allegations require dismissal. *Shogen v. Global Aggressive Growth Fund*, Civ. Action No. 04-5695 (SRC), 2007 U.S. Dist. LEXIS 31093, at *40–41 (D.N.J. Apr. 26, 2007) (to prevail on a claim for common law fraud, a plaintiff "must be able to show an actual intention to deceive her on the part of the Defendants, rather than mere recklessness").

### 3. The Complaint Fails Adequately to Allege Loss Causation

Plaintiff's response to CGMI's argument that the Complaint fails to plead loss causation highlights this very deficiency in the Complaint. Plaintiff contends that "woeful lack of demand" caused the bonds to fail. Opp. at 32. Yet nowhere does Lord Abbett explain how allegedly concealing the Cox Report caused such "woeful lack of demand." As CGMI showed in its opening brief, Plaintiff must plead much more than it has to assert properly the element of loss causation. CGMI Mem. at 24–25.

### 4. The Complaint Fails Adequately to Allege Reasonable or Justifiable Reliance by Plaintiff

Lord Abbett's concession that it reviewed the 2005 Audited Financial Statements and the 2006 Budget and knew that the project was "in trouble" (Opp.

at 5), coupled with its own analyst's recommendation not to purchase the Second Tier Bonds (Compl. ¶ 122), destroys any notion of justifiable reliance upon CGMI. *See In re House of Drugs, Inc.*, 251 B.R. 206, 211 (Bankr. D.N.J. 2000) (no reasonable reliance where plaintiff had CPA review financial statements and plaintiff asked no follow up questions); *Lane v. Schmied*, 2008 WL 351291 (N.J. Super. A.D. Feb. 11, 2008) (no reasonable reliance where house inspector saw and noted existence of lawn drainage system even though home seller had denied existence of drainage problem); *see also Quinn v. McGraw-Hill Cos.*, 168 F.3d 331 (7th Cir. 1999) (no reasonable reliance on rating where purchaser had been warned of substantial risks and purchaser knew of recent past financial problems).[4]

### B. The Statute of Limitations Bars The New Jersey Securities Law Claim

As CGMI established in its opening brief, Plaintiff was on inquiry notice that the project was in trouble and bleeding money at the time it acquired the Second Tier Bonds, and at least as of November 2006 when the First Tier Bonds were downgraded. CGMI Mem. at 30–31. Lord Abbett offers no meaningful answer to the long list of "storm warnings" that put it on inquiry notice of the facts forming the basis of the Complaint:

---

[4] Lord Abbett also claims to have relied upon the Monorail's 2006 Budget supplied by CGMI. Opp. at 31. While Lord Abbett seems to find fault with the Monorail's Budget itself, there is no basis for Lord Abbett to claim that CGMI did anything improper in passing along the current information it possessed.

- The 2005 Audited Financials, which highlighted the Monorail's nearly $45 million loss in 2005 and $90 million deficit. Compl. ¶¶ 19, 116.
- The Fitch downgrade less than two weeks after Plaintiff's final purchase of the Second Tier Bonds (in October 2006) and Moody's similar downgrade soon thereafter. *Id.* ¶ 125.
- The Second Tier Bond events of default in 2008 and 2009. *Id.* ¶¶ 128, 132.

These events, coupled with press reports[5] of troubles at the Monorail (CGMI Mem. at 12), put Lord Abbett on inquiry notice that the Monorail's performance was not the success that Lord Abbett says that it expected and leave no doubt that a "reasonable investor of ordinary intelligence" would have "identified [these events] as a storm warning'" prior to September 2009 (two years prior to the commencement of this action). *See DeBenedictis v. Merrill Lynch & Co.*, 492 F.3d 209, 217–18 (3d Cir. 2007) ("A plaintiff in a securities fraud action is put on inquiry notice when a 'reasonable investor of ordinary intelligence would have discovered the information and recognized it as a storm warning.'").

---

[5] For statute of limitations purposes, the Court may take judicial notice of documents for the additional reason that they are relevant to the question of when Plaintiff reasonably should have discovered the Cox Report. *Omega Advisors, Inc. v. Fed. Ins. Co.*, Civil Action No. 10-912, 2010 U.S. Dist. LEXIS 125934, at *12–13 (D.N.J. Nov. 30, 2010). Here, the question of when a plaintiff exercising reasonable diligence would have discovered its claim for purposes of the statute of limitations defense is an objective one, and so must take into account the availability of public facts that could have led to such discovery. *See Benak v. Alliance Capital Mgt.*, 349 F. Supp. 2d 882, 889 n. 8 (D.N.J. 2004) (observing that the court could take judicial notice of publicly available documents to evaluate the objective question of when a reasonable plaintiff would have been put on inquiry notice of her claim).

It is of no moment that the Monorail failure was not as big as the failure of Enron, as Plaintiff argues. Opp. at 38. Because the press was covering the Monorail failure years before September 2009, this Court has sufficient basis to conclude that a sophisticated high yield bond fund with a $13 million investment in a Nevada infrastructure project could have discovered the facts underlying its claim with reasonable, or even minimal, diligence. *See Benak v. Alliance Capital Mgmt. L.P.*, 349 F. Supp. 2d 882, 888 n.7 (D.N.J. 2004) (holding that investors should have discovered the facts about Enron underlying their fraud claim, but not because of "plaintiffs' arguments concerning . . . the legal sufficiency *vel non* of the number and type of articles [about Enron] in the public domain. Other courts have relied on far fewer and less mainstream articles than those relied upon in the Complaint and otherwise in the public domain"). Accordingly, Plaintiff's claim for violation of the NJUSA is barred by the statute of limitations.[6]

## II. THE SECOND CLAIM FOR NEGLIGENT MISREPRESENTATION SHOULD BE DISMISSED

Lord Abbett's negligent misrepresentation claim fails for the same reasons its fraud claims fail: the Complaint does not adequately allege reasonable or justifiable reliance, loss causation, or a duty to disclose. Any one of these failings

---

[6] As discussed *supra* at p. 7–8, the Cox Report had been widely reported and Plaintiff is deemed to have been on inquiry notice of such Report as well. *See* CGMI Mem. at 37–38.

dooms the Complaint, regardless of whether New York or New Jersey law applies. CGMI Mem. at 32–33. The negligent misrepresentation claim also fails because Plaintiff is a sophisticated counterparty in an arms-length transaction. *Id.* at 35. Although Lord Abbett tries to distinguish the cases cited by CGMI to support this argument, it offers no cases to refute them.

Lord Abbett makes much of the choice of law issues presented by the CGMI Motion,[7] but it misconstrues CGMI's argument. New York law should govern Plaintiff's claim for negligent misrepresentation not just because CGMI is based in New York, but also because the Complaint alleges that CGMI was creating a secondary market for the Second Tier Bonds in New York. Compl. ¶¶ 1, 4. Because New York law applies,[8] and because Lord Abbett does not contend that there was the "special relationship" that New York law requires, Plaintiff's negligent misrepresentation claim should be dismissed.[9]

---

[7] Notably, just as Plaintiff cites to a standard for the motion to dismiss that has been rejected, it likewise cites a choice of law test – the "governmental interest test" – that has been superseded. Opp. at 34; *see Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 460–61 (D.N.J. 2009) (explaining that although New Jersey courts had previously applied the "governmental interest analysis" to tort claims, in *P.V. v. Camp Jaycee*, 197 N.J. 132 (2008), the New Jersey Supreme Court "abandoned the flexible governmental interests analysis in favor of the most significant relationship test in the context of tort choice of law issues").

[8] Although New York law applies and compels dismissal of Plaintiff's negligent misrepresentation claim, as explained in CGMI's opening brief, the result would be the same under New Jersey law. CGMI Mem. at 34–35.

[9] CGMI originally argued that New York's Martin Act precludes Lord Abbett's

## CONCLUSION

In view of the foregoing, and for the reasons set forth in its original Motion, CGMI respectfully submits that, pursuant to Rules 12(b)(6), 9(b) and 8(a) of the Federal Rules of Civil Procedure, the Complaint should be dismissed with prejudice.

Dated: Newark, NJ  
       February 15, 2012

BRESSLER, AMERY & ROSS, P.C.

By:     /s/ Edwin A. Zipf  
       Edwin A. Zipf

Edwin A. Zipf (EZipf@bressler.com)  
325 Columbia Turnpike, Suite 301  
Florham Park, NJ 07932

Marshall H. Fishman  
(Marshall.Fishman@freshfields.com)  
Timothy P. Harkness  
(Timothy.Harkness@freshfields.com)  
Cheryl L. Howard  
(Cheryl.Howard@freshfields.com)  
**FRESHFIELDS BRUCKHAUS DERINGER US LLP**  
601 Lexington Avenue, 31st Floor  
New York, NY 10022

*Attorneys for Defendant Citigroup Global Markets Inc.*

---

negligent misrepresentation claim, noting that the New York Court of Appeals had accepted an appeal to consider this issue. CGMI Mem. at 36–37. The Court of Appeals has ruled, holding that the Martin Act does not preclude claims such as negligent misrepresentation. Accordingly, CGMI withdraws this argument.